UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY MARGARET GUNNESS-VALLANDINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 16-09078-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. <u>INTRODUCTION</u>

Plaintiff Mary Margaret Gunness-Vallandingham ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. <u>PROCEEDINGS BELOW</u>

On August 10, 2011, Plaintiff filed a Title II application for DIB alleging disability beginning November 6, 2009. (Administrative Record ("AR") 47, 59-

60.) Her application was denied on January 19, 2012.[1] (AR 61.) On March 13, 2012, Plaintiff filed a written request for hearing, and a hearing was held on October 24, 2012. (AR 66, 648-668.) Represented by counsel, Plaintiff appeared and testified, along with a medical expert and an impartial vocational expert. (AR 607-68.) On November 15, 2012, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] since November 6, 2009. (AR 22.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 4.)

Plaintiff filed an action in the District Court on June 23, 2014. (AR 688-92.) On March 26, 2015, the Court reversed and remanded the matter for further administrative proceedings. (AR 698-711.)

Another hearing was held on June 15, 2016, where Plaintiff again appeared and testified, along with a medical expert and an impartial vocational expert. (AR 602-47.) On August 17, 2016, the ALJ again found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from November 6, 2009 through December 31, 2014, the date last insured ("DLI"). (AR 595.) Plaintiff filed this action on December 7, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 6, 2009, the alleged onset date ("AOD"), through December 31, 2014, her date last insured. (AR 587.) At **step**

---

[1] This case is a "prototype case" that skips the reconsideration level of appeal. (AR 59; Joint Stipulation ("JS") 1, Dkt. No. 16.)

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

**two**, the ALJ found that through the date last insured, Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine areas; osteoarthritis of the bilateral hips; and obesity. (*Id.*) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 589.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [L]ift and/or carry fifteen pounds occasionally and ten pounds frequently, stand and/or walk up to four hours in an eight-hour workday (no more than forty-five minutes at a time), and sit up to six hours in an eight-hour workday (no more than forty-five minutes at a time), with no more than occasional bending, stooping, crawling, or climbing stairs, and no climbing ladders, ropes, or scaffolds.

(*Id.*)

At **step four**, based on the Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as an account manager, and therefore did not proceed to **step five**. (AR 594.) Accordingly, the ALJ found that Plaintiff had not been under a disability from the AOD through the date last insured. (AR 595.)

### III. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial

evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. **DISCUSSION**

Plaintiff raises three issues for review: (1) whether the ALJ properly assessed Plaintiff's subjective complaints; (2) whether the ALJ properly evaluated the opinions of the treating and examining physicians; and (3) whether the ALJ erred in finding that Plaintiff can return to her past relevant work. (JS 2.) The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility, properly weighed medical opinions, and properly found that Plaintiff can return to her past relevant work. (JS 17, 30, 47-48.) For the reasons below, the Court agrees with Plaintiff on the issue of her subjective complaints and remands on that ground.

///

///

4

## A. The ALJ's Assessment of Plaintiff's Subjective Complaints Is Not Supported By Substantial Evidence

Plaintiff argues that the ALJ improperly discounted Plaintiff's complaints of pain and failed to provide legitimate reasons for finding Plaintiff's complaints inconsistent with the evidence in the record. (JS 2-3, 7.) The Commissioner argues that substantial evidence supports the ALJ's determination that Plaintiff's complaints are inconsistent with the evidence. (JS 7.)

### 1. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she was 65 years old and last worked full time in 2009. (AR 622.) She was laid off from her job and began receiving distributions from a long-term disability insurance policy. (AR 624-25.) Plaintiff testified that she was able to receive long-term disability due to her "injuries at the time." (AR 625.) Plaintiff settled a workers' compensation claim about two years after she stopped working. (AR 625-26.) Plaintiff testified that she "wasn't able to" find other jobs because she "couldn't work any hours consistently." (AR 625, 627.)

Plaintiff testified that her low back made her "unable to sit for any length of time" and her shoulders and neck made her unable to type and work on a computer. (AR 625.) Plaintiff testified that she was able to sit for only about 15 or 20 minutes before her back and shoulders prevented her from continuing without heavy medication. (AR 627-28.) She would then go lie down for "a couple of hours" before she could return to her tasks for about another 20 minutes. (AR 628.) Plaintiff testified that she had difficulty using the computer because of problems sitting, and neck and shoulder pain that extended into her arms and fingers. (AR 629.) Plaintiff testified that her hands would "get a little numb" and she could type for only about 10 or 15 minutes. (*Id.*) Plaintiff testified that she the type of work she did required about five to six hours of typing during an eight-to-nine hour day. (*Id.*) Plaintiff also testified that she could stand for only about 15 or 20 minutes at a

time before she would "need to sit and move around because of the low back pain." (*Id.*)

Plaintiff testified that she had been taking Vicodin or Norco for pain, Meloxicam and ibuprofen for inflammation, and something to settle her stomach after a couple of attacks of diverticulitis. (AR 630-31.) Plaintiff testified that the medications made it "hard to concentrate and work." (AR 631.) Plaintiff testified that she would take her medication when she "knew [she] wasn't going to have to sit for very long and [she] could go in and lay down, not drive at that time." (*Id.*) Plaintiff "tried not to take it if [she was] going to be going anywhere" because the medication made her sleepy and less careful about moving around. (AR 631-32.) Plaintiff also took medication for gastrointestinal problems. (AR 633-35.) Plaintiff testified that her medications made her feel fatigued. (AR 635.)

Plaintiff testified that her pain made it hard for her to focus: when the pain was at a high level, she could remain focused for only about 10 or 15 minutes before she would need to take her pain medication. (AR 631.) Plaintiff testified that her pain would be at a high level when she was sitting. (*Id.*) Plaintiff "needed to be mobile," and her "tossing and turning at night" caused her to be exhausted in the morning. (*Id.*) Plaintiff testified that her pain was like that every day. (AR 632.)

Plaintiff testified that she had "hip discomfort" that between 2010 and 2012, and her doctor recommended surgery in 2014. (AR 636-37.) Plaintiff's surgery was scheduled later, in 2015, "for insurance reasons" because Plaintiff would then be eligible for Medicare. (AR 637.) Plaintiff testified that her doctor prescribed her medication during the time until the surgery. (*Id.*)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d

586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 590.) The ALJ relied on the following reasons: (1) Plaintiff's course of treatment; and (2) lack of objective medical evidence to support the alleged severity of symptoms. (AR 590-93.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Plaintiff's Course of Treatment

The ALJ found that Plaintiff's course of treatment did not support her allegations, noting that Plaintiff "received little treatment" from her two physicians and reported that her back pain improved with conservative treatment. (AR 592-93.) The ALJ also noted that Plaintiff's condition improved with further treatment after the date last insured, which "casts additional doubt on the claimant's allegations of totally disabling symptoms and functional limitations." (AR 593.)

7

An ALJ may discount a claimant's testimony based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ noted that Plaintiff "received little treatment" from Jeff B. Tirsch, D.C., and Glenn E. Lowenberg, D.C. (AR 592.) The evidence does not support this finding. Treatment records reveal over 120 visits during the relevant period of November 6, 2009 through December 31, 2014. (*See, e.g.*, AR 189-205, 213-17, 558-69, 981-98.) Plaintiff's frequency of visits varied from one to eight visits per month, with only a few one-month gaps and one three-month gap in treatment. (*See, e.g.*, AR 213-17, 982-85, 989-93.)

The ALJ stated that Dr. Tirsch attributed Plaintiff's delays in receiving treatment to disputes with Plaintiff's insurance provider. (AR 592; *see* AR 555.) The ALJ observed, "It does not appear the claimant sought treatment at free, public, or low-cost facilities while she awaited the decision of her insurance carrier." (AR 592.) However, there is no evidence that such alternative facilities and treatment were available to Plaintiff. *See Jones v. Astrue*, No. CV 08-2860-CT, 2008 WL 4609974, at *6 (C.D. Cal. Oct. 10, 2008) (rejecting an ALJ's insistence that an uninsured claimant should have obtained low-cost treatment when no evidence indicated that such treatment was available). Moreover, when considering treatment history, Social Security Ruling 16-3p requires an ALJ to consider that "[a]n individual may not be able to afford treatment *and may not have access to*

///

///

///

*free or low-cost medical services.*" Soc. Sec. Ruling 16-3p (Oct. 25, 2017), 2017 WL 5180304, at *10 (emphasis added).[3]

The ALJ also noted that during a March 2010 orthopedic evaluation, Plaintiff told Phillip J. Kanter, M.D., that her back pain improved with rest, medications, hot showers, massages, and heating pads. (AR 592-93; *see* AR 301.) The ALJ determined that this "evidence of limited treatment" suggested that Plaintiff's symptoms "were not as serious as she alleged through the date last insured." (AR 593.) Plaintiff testified at the hearing that she had been prescribed Vicodin or Norco for pain and Meloxicam for inflammation. (AR 630, 637.) Treatment records reveal a long history of Plaintiff also taking various other prescription painkillers and anti-inflammatories, including Tramadol. (*See* AR 263 (March 2011); AR 270 (May 2011); AR 276 (July 2011); AR 282 (August 2011); AR 357 (September 2010); AR 377 (November 2011); AR 1083, 1106 (November 2014); AR 1085-86 (December 2013); AR 1103-04 (December 2014).) The ALJ's reliance on Plaintiff's single statement to Dr. Kanter does not provide substantial evidence to support a conclusion that Plaintiff's treatment was conservative or "limited." *See Shepard v. Colvin*, No. 1:14-CV-1166-SMS, 2015 WL 9490094, at *7 (E.D. Cal. Dec. 30, 2015) (finding that a record that reflected "substantial medical treatment and heavy reliance on pain medication," including narcotics and Meloxicam, did not support a finding that treatment was conservative); *Ruiz v. Colvin*, No. CV 14-08867-AS, 2016 WL 471208, at *6 (C.D. Cal. Feb. 5, 2016) (finding that treatment was not conservative when it consisted of taking Tramadol for pain, physical therapy, and a referral to an orthopedist for surgical options).

Finally, the ALJ observed that Plaintiff's condition improved with continued treatment, including hip surgery, after the date last insured. (AR 593.) The ALJ

---

[3] Although the Ruling was republished in March 2017, after the date of the ALJ's decision, the revisions to the Ruling were minor clarifications. *See* 2017 WL 5180304, at *1. The revisions did not affect the quoted language, which was in effect on the date of the ALJ's decision.

9

noted that, because the evidence would establish disability after the date last insured, it was of "limited probative value." (*Id.*) Nevertheless, the ALJ concluded that the "evidence of improvement in the claimant's condition and functioning with treatment casts additional doubt on the claimant's allegations of totally disabling symptoms and functional limitations." (*Id.*)

The ALJ must consider only impairments that existed prior to the DLI, but evidence that postdates the DLI can be probative of pre-DLI disability. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010) (citing *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). Although Plaintiff's DLI was December 31, 2014, her August 2015 left hip replacement (*see* 1041) is still relevant to the determination of disability. *See Logan v. Colvin*, No. ED CV 12-107-PJW, 2013 WL 5332454, at *3 (C.D. Cal. Sept. 23, 2013) ("[B]ecause Plaintiff's burden in this case was to establish that he became disabled before December 31, 2008, his date last insured, and that his impairment lasted or was expected to last for at least 12 months, the ending date for purposes of the disability analysis was December 31, 2009." (citing 42 U.S.C. § 423(d)(1)(A)). In November and December 2014—before Plaintiff's DLI—Plaintiff's orthopedic records noted that Plaintiff had severe degenerative joint disease and may require a total hip replacement in the next several months. (AR 1103-04, 1107-08.) Plaintiff testified that her surgery was scheduled later in 2015 "for insurance reasons" because she would then be eligible for Medicare. (AR 637.) The fact that Plaintiff did indeed undergo surgery (*see* AR 1022, 1041) is probative of the severity of her hip condition when the surgery was recommended, before her DLI.

The ALJ noted that treatment records indicated that Plaintiff was improving and progressing well after her surgery. (AR 593; *see* AR 863, 885, 895, 899, 909, 1013-21.) However, this evidence of improvement is only relevant to Plaintiff's hip condition. At the hearing, Plaintiff primarily testified about pain in her low back, neck, and shoulders, as well as about the side effects of her medications. (*See*

AR 625, 627-32, 635.) The evidence of Plaintiff's hip surgery and the subsequent improvement of her condition and functioning is not a legitimate reason to discredit Plaintiff's subjective complaints about other symptoms and limitations.

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective testimony.

### b. Reason No. 2: Lack of Supporting Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective evidence—cannot form the sole basis for discounting pain testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective testimony. Accordingly, remand is warranted on this issue.

### B. The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments that the ALJ improperly evaluated physicians' opinions and erred in finding that Plaintiff can return to her past relevant work. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is

warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony.

On remand, the ALJ shall reassess Plaintiff's subjective allegations in light of SSR 16-3p – Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016), which would apply upon remand. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

///

///

///

12

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 13, 2017

*Rozella A. Oliver*

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**